Camenisch et al., Appellants, *v.* Allen et al.

Argued October 1, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Abraham Wernick,* for appellants.

*Lewis R. Linet,* for appellee.

OPINION BY BALDRIGE, P. J., October 24, 1945:

This appeal is from the dismissal of a bill in equity filed by the plaintiffs, appellants herein, to restrain the first named defendant, Howard C. Allen, from violating a clause in an employment contract. This appeal is not being pressed against Caroline White, the second named defendant.

The contract, dated November 30, 1943, was between Carrie C. Newman, trading as Philadelphia Auditing and Calculating Company, and Howard C. Allen, who

was to be the manager of the company at a salary equal to 50% of the net profits. Paragraph 5, which gives rise to the main dispute before us, reads as follows: "In case the party of the second part either cancels this contract, or leaves the employ of the party of the first part, or in case this contract is canceled by the party of the first part for any reason whatsoever, the party of the second part hereby agrees; that he will not directly or indirectly engage in, start, or in any way be interested in or connected with, either financially, as an employe or otherwise, another Company, partnership or organization, individual or individuals, engaged in, connected with or doing a similar kind of work as the work of the Philadelphia Auditing & Calculating Co., within the City of Philadelphia and a radius of one hundred miles therefrom, for a period of one year thereafter."

On October 7, 1944, Carrie C. Newman sold the business to the plaintiffs under a written contract and all her interests in the employment agreement with Allen were assigned to them.

President Judge FINLETTER, the learned chancellor, found upon sufficient competent evidence that in the summer of 1944, N. E. Newman, the husband of Carrie C. Newman, (who had been spending most of his time in either California or Florida) came to Philadelphia and took charge, as general manager, of the Auditing and Calculating Company. He reduced Allen to the position of salesman and limited him to seeking new customers. The chancellor found also that Newman, sometime during August 1944, issued written orders placing his wife, his son, and himself on the firm's payroll for a total sum of $900 per month. The chancellor held that Allen's demotion from manager to a street salesman and the increased salaries, which materially and substantially reduced the profits payable to Allen, constituted a serious breach of the contract. Exceptions filed to his findings and conclusions were dismissed by the court below sitting in banc.

The appellants argue that the evidence does not show that the employer violated the terms of the contract; that Allen was consulted by N. E. Newman about increasing the business and arranging for the future and that Allen expressed approval of the proposed plans; that Newman tried to assist him in the performance of his duties, but did not supersede him as manager; that Allen's actions and the opinions he expressed indicated that he regarded the scope of his authority greater than that of a salesman. These contentions relate to questions of fact within the chancellor's province to determine under the evidence before him. The appellants further assert that as Allen ceased to perform his duties, it was he who breached the contract; that in any event the employer had the right under paragraph 5 to cancel the contract for any reason whatsoever.

This case had been previously appealed to the Supreme Court, (351 Pa. 257, 40 A. 2d 420) from a decree of Judge BROWN refusing the motion for a preliminary injunction. In his opinion, which was adopted by the Supreme Court, he referred to the distinction between a canceled and a broken contract, and held the contract "was *broken*, not cancelled, by her husband [N. E. Newman] who was the real owner of and controlled the business before its purchase by plaintiffs." There can be no doubt, notwithstanding additional testimony was taken at the hearing before Judge FINLETTER, that N. E. Newman was acting with full authority.

"A breach of contract is a non-performance of any contractual duty of immediate performance." Restatement of the Law, Contracts, §312. Bouvier's Law Dictionary defines a breach of a contract as "the violation of an obligation, engagement, or duty." Where the agreement is mutual and dependent, and one party fails to perform his part the other party may unquestionably treat it as breached: *Hocking v. Hamilton,* 158 Pa. 107, 27 A. 836. A cancellation of a contract, on the other hand, is the destruction, obliteration, or tearing off of

the signatures: Restatement of the Law, Contracts, §432, Comment b.

Appellants call attention to the fact that the increases in the payroll had not gone into effect before Allen severed his relations with the company. Newman's increasing the payroll was at least an anticipatory repudiation, and constituted a breach of the contract: Restatement of the Law, Contracts, §318. See, also, *Hocking v. Hamilton,* supra, and *McCormick et al. v. Fidelity and Casualty Company,* 307 Pa. 434, 161 A. 532.

Appellants argue also that "canceled by the party of the first part for any reason whatsoever" appearing in the contract, has the same meaning as if the words "breach of contract" had been used. Viewing this contention in its most favorable light, the meaning of the language used by the parties is not altogether clear. Ambiguity in a contract may be clarified or explained by oral evidence, but then the intention of the parties, like other disputed issues of fact, is for the jury to determine, or, as in this case, for the chancellor primarily: *Schwartz et al. v. Whelan et al.,* 295 Pa. 425, 430, 145 A. 525. As his findings were amply supported by evidence and approved by the court in banc, they are binding upon us: *Harrison v. Welsh,* 295 Pa. 501, 145 A. 507.

As the appellants in this case are the assignees of the Philadelphia Auditing and Calculating Company, their rights do not rise above those of the assignor: *First National Bank of Bangor v. Bangor Trust Company,* 297 Pa. 115, 146 A. 595; Restatement of the Law, Contracts, §167.

The appellants rely upon *Clark & Clark v. Pinkerton,* 111 Pa. Superior Ct. 150, 169 A. 413; *Standard Dairies Inc. v. McMonagle, et al.,* 139 Pa. Superior Ct. 267, 11 A. 2d 535; and *Srolowitz v. Roseman,* 263 Pa. 588, 107 A. 322. In none of these cases was there a breach of a contract upon the part of the employer; they do not rule this case.

The decree of the court below is affirmed at appellants' costs.