## Commonwealth ex rel. v. Spano

*R. P. Alexander,* for relator.
*Joseph Skale,* for respondent.

WINNET, J., June 6, 1949.—Petitioner, through this writ of habeas corpus, seeks to share the custody of his three-year-old son, who is with respondent, the mother. The facts are not in dispute. The child was born out of a bigamous marriage. Petitioner is an American citizen of Italian descent. In August 1937 while in Italy he married one, Eugenia Bombara, who bore him two children. At the outbreak of the war, he was required by the American authorities to return to this country. In the latter part of 1944 he received information that his wife and children had been killed in an air raid. In good faith he married present respondent who bore him a son, the subject of these proceedings.

In 1947 he was first notified through the Italian Embassy that his wife and children were living and were in destitute circumstances. He informed respondent and sent for his wife and children. They

now reside with him in Philadelphia. Respondent, upon learning of the first marriage, left petitioner. On May 11, 1948, she obtained an order in this court in the sum of $7.50 per week for the support of her son. On December 20, 1948, she instituted annulment proceedings, and a final decree is about to be entered. For some period of time she allowed petitioner to see the child but lately has been unwilling to share custody of him or allow him any visitation. Petitioner seems genuinely fond of his son and wishes to see him at regular intervals. We are convinced that the best interest and permanent welfare of the child will be served by refusing the petition and denying him any right of custody or visitation.

The status of the child is unfortunately clear. "An annulment presupposes the invalidity of the marriage contract; it is void ab initio and is attended with the harsh consequences of rendering children born illegitimate"; Eisenberg v. Eisenberg, 105 Pa. Superior Ct. 30, 34. Petitioner as putative father has no rights in this child, only the obligation to support. This obligation to support can be enforced by criminal prosecution: Commonwealth v. Bertram, 143 Pa. Superior Ct. 1. See Commonwealth ex rel. DiDonato v. DiDonato, 156 Pa. Superior Ct. 385, on the obligation to support a child after annulment. The obligation to support does not necessarily give rise to a right of custody or visitation: Commonwealth ex rel. Bucciarelli v. Bucciarelli, 162 Pa. Superior Ct. 582; Commonwealth ex rel. Firestone v. Firestone, 158 Pa. Superior Ct. 579.

Counsel for petitioner has urged Commonwealth ex rel. Harper v. Fuller, 142 Pa. Superior Ct. 98, as authority for the right of petitioner, as the putative father, to share custody. The issue in that case rose upon the death of the mother. The court held as be-

tween a maternal aunt, the putative father would have a superior right to custody if he were a suitable person. Counsel argues that since it is conceded that petitioner is a suitable person he should at least have the right of visitation and a sharing of custody with the mother of the child. The authority has no application to the present case. Conceivably where the child has lost its mother a putative father may have a superior right over a stranger. Here the mother is alive. It would be detrimental to the child's welfare to continue petitioner's interest. It can only serve as a reminder to him of his unfortunate status. His relationship with the children of his father is bound to be confusing and disturbing. The health and welfare of a child must not be shattered in the crossfire of supposedly conflicting rights as to its custody. Commonwealth ex rel. Flannery et ux v. Sharp et al., 151 Pa. Superior Ct. 612. This principle should be particularly applicable in this case where we see no legal right of the father.

Another consideration would prompt us to foreclose any right of visitation by the father. The mother of the child is a young attractive woman. She may marry again. In such event the child may have the opportunity of being adopted. Petitioner would have no rights in such an adoption under the Adoption Act of April 14, 1925, P. L. 127, 1 PS §2 (c). His consent is unnecessary. To continue his interest and affection would only cause difficulty at the time of the adoption, in preventing a proper adjustment of the child to his new relationship. It is for the best interest and permanent welfare of the child to terminate now, while the child is yet at a very tender age, all contacts between him and petitioner.

The petition is dismissed.